181923 Juan Alicio Samayoa Cabrera v. William P. Barr Mr. Olin. Good morning, Your Honours. Randy Olman from Mr. Samaya whose application for the Board of Immigration Appeals. And the Board gave three, as best can be determined, the Board gave three reasons for its denial. The first was that Mr. Samaya's fear was generalized and unsupported, and not specific. Secondly, they held that matter of J.E. stands for the proposition that prison conditions cannot constitute torture unless they are board held that even if Mr. Samaya is tortured, there would be insufficient government involvement to satisfy the statute. None of these reasons withstand scrutiny. The first reason that Mr. Samaya's fear is generalized and unsupported is remarkable in light of the fact that the government submitted 400 pages of documentary evidence which depict Mr. Samaya as one of the worst war criminals and human rights abusers in the 30 year history of the Guatemalan Civil War. Among some of that evidence is that the government of Guatemala is waiting for him to be deported, that the chief prosecutor in Guatemala can't wait for him to be deported, that many of the family members of the alleged victims, and let me say, so we don't forget that Mr. Samaya obviously disputes all of the allegations against him, are making threats against him. He is being portrayed by the government as public enemy number one in a sense, so I don't know how they can possibly say that his fear is unsupported or general. It's very specific, he has good reason to fear. Secondly, in matter of J.E. on this, this court has said on a number of occasions that J.E. does not constitute a per se rule and that it must be shown that prison conditions are qualitatively different from those in Haiti, that they do satisfy that standard. In Haiti and in the abandoned case that this court has decided, without minimizing the harms, the conditions there were kind of garden variety, lack of space, lack of adequate food, no recreation, no exercise, things of that nature. And the evidence submitted here shows that Guatemalan prisons are effectively run by the inmates. I refer the court to page 22-24 of my brief, I tried to summarize some of the aspects, but briefly, the risk of dying in Guatemalan prisons is 12 times higher than being on effectively handed control of the prisons to the inmates. Lax government control has turned prisons into time bombs, as well as criminal finishing schools. There are instances of decapitations taking place. So are you making an argument that no prisoner can be sent back? No, in fact this... So what's the connection between this point and the point that you're making? I'm sorry? What is the connection between this point about the general state of prison conditions and the point you're trying to make? The most important part, Your Honor, is that the evidence in the record shows that all of these conditions that afflict the Guatemalan prisons are the result of government... Yeah, but you're not saying that no prisoner can be sent back to a Guatemalan prison. No, no, in fact... So then what is the relevance of the fact that there is this general state of prison conditions in Guatemala with respect to the particular claim you're making about your client? Well, they have to be viewed in light of who Mr. Samoy is perceived to be. And what is the evidence that in consequence of who he is, the conditions that you're not saying are so bad that no one can go back will be so bad that he can't be sent back? Well, I think just the combination of the prison conditions and the fact that Mr. Samoy is so notorious that it's more likely than not that he will be subjected to torture. Well, but isn't that somewhat undercut by the fact that his co-defendant or alleged accomplice, Mr. Noriega, apparently has survived his incarceration and indeed been released on some form of parole? Well, the government's contending that they are similarly situated. Yes, I know, and the government has offered some evidence to support that. The fact of the matter is that Mr. Noriega was apprehended and served 20-some years or 30 years in prison. And survived it. He did survive it. Mr. Samoy has been at liberty for 30 years. He certainly will not be perceived as being similarly situated to Mr. Noriega. In addition, the documentation that Mr. Noriega's son submitted in the case said that there were attempts on his life throughout the time that he was in prison and that his prison transfer was not the result of beneficence on the part of the government. He paid for it. And the documentation shows that the inmates are running the asylum and they routinely charge inmates in order to protect them and transfer them to other facilities. The board also said that there is insufficient evidence of acquiescence. The fact of the matter is that not only is there acquiescence, but there is evidence in the record that the Guam government is complicit in torture. They not only acquiesce, they perpetrate the torture themselves. There is evidence in the record that the director of the Guam prisons conspired with a member of the army to extort and murder a human rights activist. The director of the prisons themselves. There are other examples of the government itself not only acquiescing, but being a perpetrator of torture. I want to note that in the Bourdais case, the petitioner failed there because the court said that he did not show any unique personal characteristics that would cause him to be singled out. And that I think goes to your question, Judge Barrett, to some degree. In that Mr. Somoya is perceived to be such a notorious figure that he has in fact satisfied that. He has shown that he has unique characteristics. Is there anything in the record that suggests his unique characteristics make him unusually susceptible to torture? Usually likely to be tortured? In other words, you've identified characteristics of him. You've identified generalized bad conditions in Guatemalan prisons. But what I'm not seeing is what the argument you're trying to make to us is as to why those generalized conditions when married up with his particular attributes make him more at risk of being tortured than some other person who you're not claiming is at risk of torture. It's hardly the case that a torture would make that intent clear or public. I don't think we have to defenestrate common sense in viewing this statute. I think just common sense says that he's probably the most reviled man in the country at this time. And there's evidence that the government does want to go after him. And I think it's just common sense that he's going to be. Let me say something about the standard of proof here. That it's more likely than not that he will be tortured. More likely than not is... More likely than not? This court has elders. They're preponderance of the evidence standard. 7th and 11th circuits disagree. You don't have to reach that level in those circuits. But we do here. But when viewing this, it seems to me that we're really holding Mr. Samoy and people in his position to a higher level standard. It's not a... Preponderance is one of the lowest standards under the law. It's not clear and convincing. It's not clear and unequivocal and convincing. In the totality of the circumstances, I think that the agency is holding him to a much higher standard than a preponderance of the evidence. Thank you. Thank you. Ms. Pargolesi. I'll say a bit. Good afternoon, I think. Sarah Pargolesi for the government. May it please the court. Your Honor, this court should deny this petition for review because as has always faded from the argument so far, the petitioner has failed to beat... Excuse me. Could you keep your voice up, please? Yeah. Excuse me. The petitioner has failed to meet his burden of proof in showing that he is more likely than not to be tortured, even while in prisons or otherwise, by government officials or at the acquiescence of government officials. Currently, the petitioner has argued that he will be prosecuted and he will be brought to justice, but those things do not amount to torture. In fact, while he cites evidence in the record that does show that one prison official may have been involved or masked in conversations with gang members, that evidence, in light of the overwhelming evidence to the contrary, does not compel the conclusion that government officials acquiesce to torture within the prisons. And as I was trying to ask, I think there are basically two strands of a claim that the petitioner has been making. One is that prison conditions generally are so bad that they constitute torture. And the other is that those prison conditions and Stanley Ola's personal circumstances put him at substantial risk for torture by other inmates, at the acquiescence of government officials, or by government officials themselves. With respect to the first prong, the petitioner has failed to show that his case is different from that of J.E. because while conditions may be worse, the gradient of the poverty of conditions is not what is, it's relevant certainly, but it's not the critical factor. He has given up the argument that nobody can be sent back to prison. Judge Barron then asked, well, what is it about him that makes it more likely he will be subject to torture or being killed in the prison? The answer was his notoriety and the government's interest in him. It seems to me that that may keep him alive in prison to face justice. We've had a recent episode in New York, but the BIA and the IJ did not so conclude, they just concluded he hadn't met his burden of proof, correct? Your Honor, respectfully, I would say that the immigration judge and the board in this case did address that specific problem as well, and found that, again, those circumstances that the petitioner alleges he is more likely than not to experience, that more likely than not finding is what the agency found, finding that he failed to meet that burden, and that those circumstances that he alleged he will be personally subject to are not supported by the record. And those findings, sorry to repeat myself, under this court's substantial evidence review, those findings are supported by the record. There's a dose of evidence about how Samuel's specific circumstances show that he specifically is more likely than not to be subjected to torture. While he says that he and Noriega are dissimilar, Noriega's experiences are the only objective clear evidence that shows how a human rights abuser would be treated in prison, and they contradict Samarito's own claims that he will be subjected to torture by prison officials or with their acquiescence. Noriega's son's letter says that Noriega was harmed, but it's not clear from that letter by whom, and he doesn't clearly say that he was harmed by police or officials within the prison. The letter also says that his family requested a transfer. It does not say that he paid for that transfer, and that transfer was granted. More importantly, while he says that there is some record evidence about Facebook debts, to Samuel himself, those Facebook posts are not clear debts, and it's also not clear that those people commenting about his immigration proceedings are even in Guatemala. And so while he attempts to show that his notoriety is why he has a unique fear of torture in Guatemalan prisons, the evidence just doesn't support those contentions. Well, I think your argument is the evidence does not compel acceptance of his argument, which is different from an argument that there's no support in the record for it. That's exactly right, Your Honor, and that is the standard that this court must apply at this level of proceedings. There is evidence in the record that supports his contentions, but it is not overwhelming the other evidence in the record, and that is evidence that in the incident of prison violence, government officials, police officials, possibly officials even within the prison, intervene and quell the violence, or at least attempt to. And that, again, in light of the one record evidence piece that the petitioner himself cites about the masked man that is probably a police, or a director of Guatemalan prisons in 2017, we don't even know if he's still the director of prisons or was at the time of Samuel's hearing in 2018. That evidence does not compel the conclusion, in light of the other evidence, that on the micro level, agents respond to violence within the prisons, and on the macro level, that the government as a whole does not condone torture in the prisons. Okay. Thank you. Thank you. Any further questions? I'm sorry. Judge Sellier, did you? No. Okay. Thank you. We would just ask that the court deny the petition for review. You know, it's just a couple of comments on the... Well, you didn't... Okay. I'll give you a minute. Thank you. With respect to your concern about prosecution, the government has made, and the agency has made an issue of the fact that he's being prosecuted, he's facing prosecution, not persecution. The two are not mutually exclusive. I, myself, believe that he will never get to be prosecuted because I believe that he will be killed before he gets to that point. And I would refer the court to a number of documents in the evidence that show that, for example, in the case where there were a number of decapitations taking place, the interior minister told the press that the police refused to go in because they were afraid they'd be harmed. That's certainly acquiescence. And there are a number of examples like that throughout the almost 800 pages of documentary evidence. Thank you. Thank you, counsel. Thank you. All rise.